HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAWRENCE SHERMAN,

        Plaintiff,

    v.

JOHN POTTER, in his capacity as
Postmaster General of the United States,

        Defendant.

CASE NO. C08-1533RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendant's motion for summary judgment and its motion for reconsideration.  Dkt. ## 45, 55.  Plaintiff requested oral argument, Defendant did not.  The court finds oral argument unnecessary.  For the reasons stated below, the court DENIES the motion for reconsideration but GRANTS the motion for summary judgment.  The court directs the clerk to DISMISS this action and enter judgment for Defendant.

## II.  BACKGROUND

Plaintiff Lawrence Sherman began working for the United States Postal Service ("USPS") in 1997.  From 2005 to present, he has been entangled in a host of disputes with his (now former) employer.  The court's discussion here focuses solely on the facts relevant to the court's disposition of the motions before it.

ORDER – 1

In 2005, Mr. Sherman worked at the Seattle Bulk Mail Center as a clerk for the Western Area In-Plant Support ("WAIPS") unit.  In 2005, USPS informed him that it had decided to transfer the WAIPS operations to a Denver facility.  USPS reassigned Mr. Sherman to its Seattle Maintenance unit.

Mr. Sherman was not pleased with the transfer.  He filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that in reassigning him, USPS had discriminated against him based on his race and his disability.  Mr. Sherman is African-American, and injuries to his feet have permanently limited the range of tasks he can perform at work.  It is not apparent from the record when Mr. Sherman filed his EEOC complaint.  He did so no later than March 7, 2006.  Howard Decl., Ex. X-1.  The EEOC complaint itself is not part of the record.

On August 9, 2006, the administrative judge to whom Mr. Sherman's complaint had been assigned issued a notice that he intended to issue a decision on the complaint without a hearing.  Howard Decl., Ex. X-8.  Mr. Sherman wished to have a hearing.  On August 21, 2006, he submitted a statement requesting a hearing.  Howard Decl., Ex. O.  To that statement he attached nine exhibits.  *Id.*  All of them were intended to support Mr. Sherman's claim that despite USPS's assertion to the contrary, his former job had not been moved out of the Seattle area.  He contended that another employee in the area was now performing many of his job duties.  Several of the exhibits he submitted were photocopies of internal USPS documents that he had made to substantiate his claim that WAIPS operations were still being performed in Seattle.  *Id.*; *see also* Howard Decl., Ex. Y.

The administrative judge ultimately dismissed Mr. Sherman's EEOC complaint.  Mr. Sherman did not appeal that dismissal or file suit.

Shortly after Mr. Sherman's August 21, 2006 submission to the administrative judge, USPS officials began inquiring into how he acquired the photocopies of the internal documents he submitted.  That investigation included several interviews of Mr.

ORDER – 2

1   Sherman.  In a November 2, 2006 notice of proposed removal, two of Mr. Sherman's
2   supervisors, Dale Bell and Lambert Obritsch, summarized the results of the investigation.
3   Howard Decl., Ex. J.  They explained the conclusion that Mr. Sherman had violated
4   USPS policies by making copies of the documents without consent, and proposed that he
5   be fired.  *Id.*  The notice advised Mr. Sherman that he could contest the proposed action
6   by writing to Nick Vendetti, the Bulk Mail Center manager.  In a written response, Mr.
7   Sherman asked for leniency, and reiterated that he had made the unauthorized copies only
8   to support his EEOC claim.  Howard Decl., Ex. K.

9       On November 30, 2006, Mr. Vendetti fired Mr. Sherman.  In his letter confirming
10  the action, he concluded that Mr. Sherman had violated USPS policy by copying the
11  documents without permission.  Howard Decl., Ex. L.  Mr. Sherman admits that he
12  photocopied the documents, but contends that termination was, at a minimum, too harsh a
13  sanction.

14      Mr. Sherman contends that USPS terminated him not because he violated USPS
15  policy, but rather to retaliate against him for his EEOC complaint.  He filed this lawsuit
16  in late 2008.  His operative complaint raises only one claim, based on USPS's alleged
17  violations of the anti-retaliation provision of Title VII of the Civil Rights Act of 1964.
18  Amend. Compl. (Dkt. # 13) ¶ 4.5 (citing 42 U.S.C. § 2000e-3).

19                          **III.   ANALYSIS**

20      On a motion for summary judgment, the court must draw all inferences from the
21  admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred*
22  *Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate
23  where there is no genuine issue of material fact and the moving party is entitled to a
24  judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party must initially show
25  the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317,
26  323 (1986).  The opposing party must then show a genuine issue of fact for trial.
27  *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The
28  ORDER – 3

1  opposing party must present probative evidence to support its claim or defense.  *Intel*

2  *Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The

3  court defers to neither party in resolving purely legal questions.  *See Bendixen v.*

4  *Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

5       In employment discrimination and retaliation cases, the *McDonnell Douglas*

6  burden-shifting analysis augments the familiar summary judgment standard.  *Aragon v.*

7  *Republic Silver State Disposal, Inc.*, 292 F.3d 654, 658 (9th Cir. 2002) (citing *McDonnell*

8  *Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Mr. Sherman must offer evidence

9  supporting a prima facie case that USPS had a retaliatory motive for firing him; if he

10 succeeds, the burden shifts to USPS to produce evidence of a lawful reason for firing

11 him; if USPS succeeds, Mr. Sherman is obligated to produce evidence that USPS's stated

12 lawful reason is pretext.  *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

13      To make out a prima facie case of retaliation, an employee need only produce

14 some evidence that he engaged in a protected activity, that he suffered an adverse

15 employment action, and that there was a causal link between the protected activity and

16 the adverse action.  *Id.*  For reasons the court will now discuss, Mr. Sherman's case

17 founders because he has no evidence that he engaged in a protected activity.

18      At first glance, Mr. Sherman engaged in prototypical protected activity:  he filed a

19 charge with the EEOC opposing two unlawful practices: race discrimination and

20 disability discrimination.  Title VII's anti-retaliation provision protects both opposition to

21 unlawful practices in general and, more specifically, the use of EEOC proceedings or

22 other legal process to oppose those practices:

> It shall be an unlawful employment practice for an employer to
> discriminate against any of his employees . . . because he has opposed any
> practice made an unlawful employment practice by this title, or because he
> has made a charge, testified, assisted, or participated in any manner in an
> investigation, proceeding, or hearing under this title.

42 U.S.C. § 2000e-3(a).  Courts often refer to the "opposition clause" and the

ORDER – 4

1  "participation clause" when describing the protected activity that the statute protects.

2  *E.g.*, *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997).

3      When an employee's purportedly protected activity falls within the opposition

4  clause, he must have a "reasonable belief" that the employer engaged in a practice that

5  Title VII makes unlawful.  *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994).  A court

6  must judge whether an employee's belief is reasonable "according to an objective

7  standard - one that makes due allowance, moreover, for the limited knowledge possessed

8  by most Title VII plaintiffs about the factual and legal bases of their claims."  *Id.* at 985.

9  Even a mistaken belief that a practice is unlawful will suffice, so long as the employee

10  made the mistake in good faith.  *Id.* at 984.  Whatever "good faith" means in this context

11  in the Ninth Circuit, the Supreme Court has held that a sincere but objectively

12  unreasonable belief does not suffice.  In *Clark County Sch. Dist. v. Breeden*, 532 U.S.

13  268 (2001), the Court considered an employee who had complained to her supervisors

14  about a single sexually-charged workplace comment.  She claimed that she was later fired

15  in retaliation for that complaint.  *Id.* at 269-70.  The Court held that her complaints were

16  not protected activity as a matter of law.  *Id.* at 271 ("No reasonable person could have

17  believed that the single incident recounted above violated Title VII's standard [for sexual

18  harassment].").

19      Moreover, the mere fact that the practice the employee opposes is unlawful is

20  insufficient, it must be a practice that *Title VII* makes unlawful.  For example, in *Learned*

21  *v. City of Bellevue*, an employee sued his employer for excess damages arising out of a

22  workplace injury.  860 F.2d 928, 930 (9th Cir. 1988).  He claimed that his employer

23  retaliated against him after he sued.  The court upheld a grant of summary judgment on

24  his retaliation claim.  *Id.* at 932 ("[Plaintiff] could not reasonably have believed that [the

25  employer] discriminated against him in violation of Title VII, and therefore, he cannot

26  claim that he was retaliated against for opposing discrimination prohibited by Title

27  VII.").

28  ORDER – 5

1      A similar standard applies to those who invoke the participation clause.  The

2  "mere fact that an employee is participating in an investigation or proceeding involving

3  charges of some sort of discrimination" does not "automatically trigger" Title VII's anti-

4  retaliation provision.  *Id.*  Instead, the employee must produce evidence that the

5  proceeding in which he is participating raises a "valid Title VII claim."  *Id.* (affirming

6  summary judgment).  A "valid" claim in this context is not necessarily one on which the

7  employee ultimately prevails.  *Id.* ("[A]n employee may fail to prove an 'unlawful

8  employment practice' and nevertheless prevail on his claim of unlawful retaliation.").

9      Mr. Sherman appears to admit that his EEOC complaint did not raise a valid claim

10  of discrimination.  Although he vigorously pursued the complaint until the administrative

11  judge dismissed it, his later admissions about the complaint are damaging.  He addressed

12  the complaint in February 2007 testimony before an administrative law judge hearing his

13  claim for unemployment compensation after USPS terminated him.  The judge asked Mr.

14  Sherman why his EEOC complaint had been dismissed.  Mr. Sherman responded:

> Because they said that I wasn't discriminated against, your Honor.  And I
> didn't file a discrimination suit.  I mean my EEO wasn't about
> discrimination.  I went to the plant manager, and I went to Bert Obritsch,
> . . . the two individuals that was implemented in that, and I told them that
> this was not about discrimination.  It was only for the pay that I did from
> 2000 to 2005.

19  Tita Decl., Ex. 4 at 75.  The judge responded: "I see."  *Id.*  Mr. Sherman continued his

20  explanation:

> That was the only reason I filed the complaint, your Honor.  Now they're
> walking around.  They're hating me, because they – and I told Mr. Vendetti
> I do not think he's a racist.  And I told him, I don't think you're a racist.  I
> just want the money for performing the labor I did.  That's all I wanted.  I
> didn't want anything else.

25  *Id.*  The judge inquired: "How did you anticipate that the EEO complaint would result in

26  pay if there was no unlawful discrimination involved?"  *Id.* at 75-76.  Mr. Sherman

27  explained that he was unfamiliar with the law and procedures for making a complaint:

28  ORDER – 6

"So therefore I didn't know anything about the – what systems to use, because later when they – when it all came down, they said that I should have filed an equal pay complaint, not an EEO complaint." *Id.* at 76.  Thus, in his February 2007 testimony, Mr. Sherman admitted that he had no claim of race discrimination despite the assertions of his EEOC claim.  He did not suggest that he had a valid claim of disability discrimination.  He suggested instead that the motivation for his EEOC complaint was to recover pay that he believed he deserved for five years preceding his allegation of discrimination.

Mr. Sherman again addressed the motivation for his EEOC complaint when USPS deposed him for this lawsuit.  USPS's counsel attempted to clarify whether this suit was limited to allegations of retaliation, as opposed to race discrimination.  Mr. Sherman again disclaimed any basis for a discrimination complaint:

> [Y]ou know, when I filed my EEO complaint, when you – when you use these purview and race discrimination somewhere in here, I even went to my plant manager and told him that it wasn't about racial discrimination.  I didn't think he was racist.  But the EEOC told me, I had to make a choice.  You know, I'm not an attorney, so I chose.

Howard Decl., Ex. F (Sherman Depo. at 113).  Counsel clarified that Mr. Sherman was referring to his earlier EEOC complaint associated with his discrimination claim,[1] and then stated, "you were mentioning just now that wasn't about race or disability, really." *Id.*  Mr. Sherman responded:

> It was about – it was about disability – it was about my disability and discrimination. . . . But the EEOC said I had to make a choice, or I had to – I forget how the EEOC told me, but I had to put down – I ended up putting down race discrimination. . . . And it wasn't about race, it was about employment discrimination, but they didn't have employment discrimination.  That's what it was.  That's exactly what it was.

*Id.* at 113-14.

---

[1] Mr. Sherman brought a second EEOC complaint raising the retaliation allegations that are the basis of this lawsuit.

ORDER – 7

In opposing USPS's summary judgment motion, Mr. Sherman offered nothing to contradict or explain his previous testimony. He did not address his February 2007 testimony. As to his deposition testimony, his sole attempt to overcome his disavowal of a basis for race discrimination is to point to his August 21, 2006 statement to the administrative judge. But that statement came before he later disavowed that he had a basis for a race discrimination claim. He also asserts that he "testified unequivocally that he believed he was being discriminated against on the basis of disability, at a minimum." Pltf.'s Opp'n at 15. To support that assertion, he cited the testimony above. That testimony contains the statement that "it was about my disability and discrimination," but it is otherwise wholly silent as to any basis for a claim of disability discrimination. No jury could conclude based solely on the conclusory statement that "it was about my disability" that Mr. Sherman had a valid claim of disability discrimination. Indeed, Mr. Sherman cites no evidence at all to support the notion that he had a colorable claim of disability discrimination. There is no declaration from Mr. Sherman in support of his opposition to the summary judgment motion. The court finds no evidence in the record that would support a finding that Mr. Sherman raised a valid disability discrimination claim.

On this record, no jury could conclude that Mr. Sherman was either opposing discrimination within the meaning of Title VII or participating in a proceeding to resolve charges of Title VII discrimination. At best, a jury could conclude that Mr. Sherman believed that USPS had done *something* unlawful, perhaps by paying him inadequately.[2] No jury could conclude, in light of Mr. Sherman's testimony and the lack of evidence showing a valid basis for a Title VII claim, that he had an objectively reasonable belief

---

[2] USPS suggests that Mr. Sherman made his EEOC complaint in bad faith, knowing that he had no basis for a discrimination claim. The court reaches no conclusion as to whether Mr. Sherman acted in bad faith, it merely concludes that he did not make the complaint in good faith within the meaning of Ninth Circuit law. *Cf., e.g., Mattson v. Caterpillar, Inc.*, 359 F.3d 885 (7th Cir. 2004) (discussing retaliation claim based on EEOC sexual harassment charge that "was both objectively and subjectively unreasonable, as well as made with the bad faith purpose of retaliating against his female supervisor").

ORDER – 8

that he had been the subject of race or disability discrimination.  Mr. Sherman has therefore failed to satisfy his burden to prove that he was engaging in protected activity, and has thus failed to establish a prima facie case of retaliation.

## IV.  MOTION FOR RECONSIDERATION

In an October 6, 2010 order, the court denied a discovery motion that USPS had purported to submit in accordance with Local Rules W.D. Wash. CR 37(a)(1)(B).  Dkt. # 54.  The court denied the motion because USPS had violated the rule by not submitting a joint motion that included Mr. Sherman's position on the discovery dispute.  In reaching that conclusion, the court observed that there was "no evidence in the record that USPS obtained Mr. Sherman's agreement to file a CR 37 submission."  Dkt. # 54 at 4.  USPS moves for reconsideration, contending that the court overlooked evidence that Mr. Sherman had indeed agreed that it could file a joint CR 37 submission.

In light of its ruling today on USPS's summary judgment motion, the discovery dispute the court addressed in its October order is moot.  The court addresses the motion for reconsideration nonetheless, as it raises important considerations regarding motion practice in this District.

The evidence that USPS believes that the court overlooked is a July 30, 2010 letter from its counsel to Mr. Sherman's counsel stating that the parties had agreed that they would raise certain discovery disputes "with the Court via CR 37 procedure or CR 7(i) telephone conference."  USPS asserts that this letter is "indisputable evidence in the record that this Court inadvertently may have overlooked and that clearly shows that such an agreement did, in fact, exist."  Def.'s Mot. at 2 (emphasis in original).

The court did not overlook the evidence.  The evidence does not show an agreement to use the "joint" motion procedure of CR 37.  It shows an agreement to use "CR 37 procedure" *or* a telephonic motion.  CR 37 itself provides for either a contested motion "noted in the manner prescribed in CR 7(d)(3)" *or* a joint motion.  Local Rules W.D. Wash. CR 37(a)(1)(B).  The parties thus agreed to use one of three options.  There

ORDER – 9

is no evidence in the record that the parties later agreed to use any particular option among the three that they discussed.  The court thus declines to reconsider its observation in the order that there was "no evidence in the record that USPS obtained Mr. Sherman's agreement to file a CR 37 submission."

CR 37's joint motion procedure can provide a substantial benefit to both the parties and the court.  That benefit comes, however, only when the parties cooperate. The court writes today to emphasize that when the parties do not cooperate, one party cannot attempt to unilaterally reap the benefits of a CR 37 motion.  The only unilateral statement that CR 37 permits within a "joint" submission is a statement it received no response from the opposing party.  Local Rules CR 37(a)(1)(B)(iii).  That statement, however, can come only after the opposing party has agreed to use the joint motion process in the first place.  There was no such agreement in this case.

## V.  CONCLUSION

For the reasons stated above, the court GRANTS USPS's motion for summary judgment (Dkt. # 45) and DENIES its motion for reconsideration (Dkt. # 54).  The court directs the clerk to DISMISS this case and enter judgment for USPS.

DATED this 14th day of March, 2011.

The Honorable Richard A. Jones
United States District Judge

ORDER – 10